```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

UNITED STATES OF AMERICA,          )
                                   )
    PLAINTIFF,                     )   CASE NO. 2:18-CR-00002
                                   )
        vs.                        )
                                   )
WYDELL L. COBB,                    )
                                   )
    DEFENDANT.                     )
_____)

```
         TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
         BEFORE THE HONORABLE EDMUND A. SARGUS, JR.
                 UNITED STATES DISTRICT JUDGE
                 NOVEMBER 15, 2018; 2:45 P.M.
                        COLUMBUS, OHIO
```

APPEARANCES:

FOR THE PLAINTIFF:

   United States Attorney's Office
   By:  KEVIN W. KELLEY
   Assistant United States Attorney
   303 Marconi Boulevard
   Columbus, Ohio  43215

FOR THE DEFENDANT:

   PETERSON CONNERS LLP
   By:  RASHEEDA Z. KHAN, ESQ.
   545 Metro Place, Suite 435
   Dublin, Ohio 43017


                            - - -


     Proceedings recorded by mechanical stenography,
transcript produced by computer.


                  DARLA J. COULTER, RMR/CRR
                OFFICIAL FEDERAL COURT REPORTER
            85 MARCONI BLVD., COLUMBUS, OHIO 43215
                        (614) 719-3245

1      THURSDAY AFTERNOON SESSION
2      NOVEMBER 15, 2018
3      - - -
4      THE DEPUTY CLERK: Case Number 2:18-CR-2, defendant
5  number 2, United States of America vs. Wydell L. Cobb.
6      Will counsel and defendant please approach.
7      THE COURT: Counsel, good afternoon to both of you.
8      Starting with the government, would you please enter
9  your appearances.
10      MR. KELLEY: Assistant United States Attorney Kevin
11 Kelley. Good afternoon, Your Honor. I apologize for my part
12 in the delay of the proceedings.
13      THE COURT: You were in front of another Court, I
14 understand; right?
15      MR. KELLEY: I was in front of Judge Graham and he
16 wouldn't let us go.
17      MS. KHAN: Good afternoon. Rasheeda Khan on behalf of
18 Wydell Cobb, Your Honor.
19      THE COURT: Good afternoon.
20     Mr. Kelley, would you please on the record recite where
21 we are in this case?
22      MR. KELLEY: Yes, Your Honor.
23     Mr. Cobb previously entered a guilty plea to Count 3 of
24 the indictment which charges him with possession with the
25 intent to distribute 500 grams or more of fentanyl.

1  The Defendant Cobb is now before this Court for
2  sentencing.
3          THE COURT:  Thank you.
4      Mr. Cobb, have you received a copy of the presentence
5  investigation report in this case?
6          THE DEFENDANT:  Yes, Your Honor.
7          THE COURT:  And have you had a chance to read the
8  entire report and discuss it with your counsel,
9  Ms. Rasheeda Khan?
10         THE DEFENDANT:  Yes.
11         THE COURT:  All right.  Ms. Khan, we have two
12 unresolved objections to the presentence report.  We'll take
13 each of those one at a time and you may address the first one
14 if you wish.  I have your submissions, of course.
15         MS. KHAN:  Thank you, Your Honor.
16     The first one relates to the relevant conduct that
17 includes the incident on September 1, 2007, and as a result of
18 that relevant conduct being included in the calculation,
19 Mr. Cobb picks up an additional two criminal history points
20 because he was under supervision at the time of that situation.
21         THE COURT:  So it's not the amount of drugs; it's the
22 time period involved.
23         MS. KHAN:  It's the time period, and I think that
24 Mr. Cobb's additional concern or initial concern when the
25 initial PSI came out is my concern is that I don't want His

1  Honor to think that I was involved in this other drug
2  transaction and so that was the initial objection.  And then
3  when the final PSI came out, it included the jump in the
4  criminal history.
5         THE COURT:  That's because of the two additional
6  points because he was on supervision during the first incident
7  but not the second.
8         MS. KHAN:  That's right.  And it's our position
9  that -- and I guess at this point, in addition to the argument
10 in the sentencing memorandum, just in response to the
11 government's sentencing memo, there still fails to be a
12 connection between that situation on September 1 and his arrest
13 in December.  He was not arrested, he was not charged, he did
14 not -- there was no finding of possession.
15        I believe that the government asserts that at the time
16 of that situation in September, Mr. Cobb was in an automobile
17 that was later searched and found to contain drugs and a gun;
18 however, someone else has accepted responsibility to that gun.
19 As a matter of fact, it's my understanding he did accept
20 responsibility immediately and then was later charged with the
21 drugs.
22        The government further asserts that Mr. Cobb was in the
23 house that was searched.  That's not correct.  Mr. Cobb was
24 never in that house.
25        And, furthermore or moreover, the government has failed

1   to indicate how that is connected to the offense of conviction
2   and that, even under the broad definition of what constitutes
3   relevant conduct, we would submit that the government has
4   failed in its burden of demonstrating how that offense relates
5   to the December 1 arrest.
6   　　　　　THE COURT:  All right.  The problem -- I don't mean to
7   cut Mr. Kelley off.  The probation officer has indicated this
8   is part of the same course of conduct.  It's not charged, I
9   understand, but it's drug trafficking in both instances.  And I
10  think this may come back into play under 3553(a), but at this
11  point I would find -- and we'll talk separately about the
12  criminal history category.  That's a different matter also.
13  　　　　　But in terms of the two being part of the same course of
14  conduct, I'm going to find that that part of the objection I'm
15  going to overrule, and the next part -- and we're going to
16  break this into three parts, not two.
17  　　　　　The next part is going to be minor role, and the third
18  part is going to be criminal history category.  So the second
19  part has to do with minor role and you may address that, if you
20  wish.
21  　　　　　MS. KHAN:  Thank you, Your Honor.
22  　　　　　Just as we outlined in the sentencing memorandum, it's
23  our position that Mr. Cobb is deserving of a minor role
24  reduction, and the government's discovery and even during the
25  discussions of its understanding of the whole drug trafficking

1  organization, Mr. Cobb came into the picture way late.  And, in
2  fact, when they were under surveillance, they had no
3  understanding of where Mr. Cobb even lived.
4          So that coupled with Mr. Cobb's assertion that he had no
5  ownership in those drugs, he didn't stand to benefit
6  immediately financially from those drugs, he had no
7  understanding of the scope and the structure of the drug
8  activity, didn't participate in the planning or organization,
9  he had no decision making authority or influence of any kind
10 and stood to benefit almost nothing from the criminal activity,
11 and for those reasons, we would submit he is deserving of a
12 role reduction.
13         THE COURT:  Mr. Kelley, you may respond.
14         MR. KELLEY:  Well, Your Honor, unfortunately, we don't
15 know more, and Mr. Cobb is simply being held accountable for
16 what he was found in possession of, along with the currency
17 that he was found in possession of.  And so the activity from
18 several months before does involve related players in the drug
19 conspiracy, and he's only being held accountable essentially
20 for the drugs that he was found with that day.  So I don't see
21 how we can distinguish him and talk about hypothetically his
22 role and how much he gained to benefit, there's no evidence of
23 that.  So under the circumstances, I don't think a role
24 adjustment is appropriate.
25         THE COURT:  Ms. Vincent, anything additional from the

probation office?

PROBATION OFFICER: No, Your Honor. Thank you.

THE COURT: Thank you for a good report.

I don't think he's more culpable than the average, but I don't think there's anything in here that would indicate to me that he would be entitled to a minor role other than the time that he was involved, and he's not having counted as relevant conduct anything that he didn't personally involve himself in so I'm going to overrule the objection.

I do want to hear both of your views with regard to criminal history. What we have here are two prior convictions, one for carrying a concealed weapon in 2001 and the other being a driving under the influence charge in 2015. Those two offenses score two points, but then there's an additional two points for the offense conduct being within a term of supervision of another conviction which places him in the category of three. I'm not suggesting he would be a one, I don't see that. I guess the question in my mind is whether he should properly be a two or a three, and I would invite your comments starting with Ms. Khan.

MS. KHAN: Well, Your Honor, in light of His Honor's conclusion relating to the relevant conduct, it does -- the fact that he's under supervision sort of puts us in --

THE COURT: Well, he was under supervision for -- I don't minimize drunk driving but it was a misdemeanor.

1     MS. KHAN:  And that's exactly where I'm going,
2  Your Honor, that essentially bumping him up into another
3  criminal history category because of that low-level offense and
4  that he had been on supervision, you know, for so long, we
5  would submit that even if he's captured in that relevant
6  conduct that his criminal history is overstated.  And, as we
7  indicated in the sentencing memorandum, this is somebody who
8  has never been incarcerated for more than 10 months, and now
9  he's looking at a sentence of 10 years.  And if the Court
10 accepts the recommended guideline sentence, it would be even
11 higher.  We would submit that this is somebody with no history
12 of drug trafficking before and that, in light of the low-level
13 offenses he had before and the fact that the supervision was
14 for a misdemeanor offense, that the criminal history is
15 overstated and we would ask that he receive a reduction putting
16 him in category two.
17    THE COURT:  Mr. Kelley, your view?
18    MR. KELLEY:  Well, even though it was accurately
19 scored, Your Honor, I actually do agree with Ms. Khan.  I can't
20 believe I just said that out loud.
21    THE COURT:  We'll order the transcript.
22    MR. KELLEY:  I do think in Mr. Cobb's situation,
23 criminal history three does probably overstate given the
24 relative minor nature and the remote time involved so I would
25 not oppose the Court going to criminal history category two.

1       THE COURT:  All right.  Ms. Vincent, do you wish to be
2   heard on that issue?
3       PROBATION OFFICER:  No, Your Honor.  Thank you.
4       THE COURT:  There's no question you scored it
5   correctly.  The question is whether it's overstated given the
6   type of crimes in the past.  One is a misdemeanor and the other
7   is seven years old.  So I am going to find the criminal history
8   category should be a two and an offense level of 31.  That
9   yields a final guideline range of 121 to 151 months.
10      MS. KHAN:  I'm sorry, can you say that again?
11      THE COURT:  121 to 151.
12    So I have received memoranda from each of you, and I
13  would invite any additional comments you would like to make
14  again start withing you, Ms. Khan.
15      MS. KHAN:  Well, Your Honor --
16      THE COURT:  Just one moment.  I want to make sure my
17  math is correct.  121 to 151?
18      MR. KELLEY:  Yes, Your Honor.
19      THE COURT:  Very good.  Ms. Khan?
20      MS. KHAN:  It's already laid out in the report and in
21  the sentencing memorandum that this is somebody who has really
22  no violent history, no significant history of drug involvement,
23  and that he's stepped in it in a big and horrible way.  And
24  while certainly the dangerousness of the substance can't be
25  overstated, I think that a 10-year mandatory minimum without

any opportunity to get below is too harsh of a punishment and it should certainly be no higher. He's already at 121 at the bottom, and we would submit that anything longer than the 10 years is far greater than necessary to appropriately punish this young man who has lost out on seeing the birth of his son, wasn't there when his father passed away. He certainly was raised in a situation that no child should have been raised in, and as a young man he deserved better and there were a lot of opportunities he should have had that should have given him the chance to associate with different people and get his life in order. I would also note the tragic part of some of this criminal history is he could have gotten some part of this expunged. There were opportunities in there that he could have gotten back on track and --

THE COURT: He could have had the safety valve, too, if he had gotten the CCW count expunged a few years ago. It's past the time to do that, but that's hindsight.

MS. KHAN: Right. And that's so tragic for somebody who time and time and time again really needed a break and didn't get it.

And for those reasons, Your Honor, we would ask that he just receive the minimum of 10 years.

THE COURT: Thank you.

Mr. Cobb, you are not required to speak, but if you would like to, I'd be happy to listen to you.

1   THE DEFENDANT: Yes, Your Honor.

2   I just want to apologize to the Court and the people who
3   could be affected by this epidemic. Like, I understand now
4   like from the cause and effect of the situation that I'm in,
5   like because of, like, I have a friend I lost in this situation
6   since I've been incarcerated in the same type of situation. I
7   just want to get back to my family as soon as possible to make
8   sure my kids don't have to grow up the same way and go through
9   the same things not having a dad around, and I just don't want
10  them to have to go through anything like this missing they dad
11  in they life so I just want to get back as soon as possible.
12  And I understand that, you know, I take full responsibility for
13  my actions and I just -- I just want to apologize.

14          THE COURT: Have you read anything about or heard
15  anything about the residential drug treatment program through
16  the Bureau of Prisons?

17          THE DEFENDANT: I read a bit on it.

18          THE COURT: You have to volunteer for that.

19          THE DEFENDANT: Okay.

20          THE COURT: I'd like to know if you're interested.
21  You've been honest with your probation officer about marijuana
22  use for a number of years and it looks to me that that's been a
23  holdback to some of the things you like to do. The Bureau of
24  Prisons, because you'll have time on your hands, is an
25  excellent place to use some of that time.

1          Are you interested?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  It's one of the few ways you

4    can earn time off a sentence, too, actually.  In fact, it's the

5    only way.

6              MS. KHAN:  I'm sorry, Your Honor.  I would also like

7    to acknowledge that Mr. Cobb's family has appeared in court

8    today.

9              THE COURT:  Good.  Glad they're here.  Thank you.

10         Mr. Kelley?

11             MR. KELLEY:  Well, Your Honor, I do hope Mr. Cobb will

12   take advantage of the opportunities in the BOP.  I do want to

13   note that at the time that this incident went down, he did warn

14   officers involved that we were dealing with a much more

15   dangerous substance than might otherwise be realized and I told

16   him at the time of his arrest, and I'll say it again, I

17   appreciate that he did take that step to help out.

18             In this situation we're limited on the sentence.  The

19   Court can impose the statutory minimum; we certainly don't

20   oppose.  I just hope Mr. Cobb will take advantage of the

21   opportunities in the future and maybe minimize the damage.

22             THE COURT:  Thank you.

23         And, Ms. Vincent, again, I thank you for a good report.

24   Do you have anything additional?

25             PROBATION OFFICER:  No, thank you, Your Honor.

1 THE COURT: Thank you.

2 The defendant, Wydell Cobb, is before me for sentencing
3 after pleading guilty to Count 1, possession with intent to
4 distribute 400 grams or more of fentanyl.

5 I am to walk through a three-part analysis in coming up
6 with the appropriate sentence.

7 The first is to correctly compute the sentencing
8 guidelines which we have just worked through.

9 The guideline offense level is 31, and the criminal
10 history category is two. That yields a sentencing guideline
11 range of 121 to 151 months. And, to be clear, this case
12 requires an imposition of at least a 10-year or a 120-month
13 sentence given the quantity of the fentanyl involved.

14 The second part of the analysis is to look at the
15 sentencing guidelines themselves to see if there are any
16 appropriate departure bases, and I find there are none.

17 And then the last and usually most difficult part is to
18 look at a series of factors in the federal criminal code under
19 Section 3553(a). There are seven. All but one of those apply
20 for consideration in this case.

21 I am first to consider the nature and the circumstance
22 of the offense together with the history and the
23 characteristics of the defendant.

24 The offense conduct is well laid out in the presentence
25 report. The defendant was essentially trafficking in fentanyl,

1  and there were firearms recovered which counted in the offense
2  conduct we've just described as far as two additional points.
3       As everyone who deals in this area knows, fentanyl is
4  deadly, very dangerous.  There have been hundreds of people
5  just in Franklin County who have died from this drug, and there
6  was a large quantity involved.  The amount of fentanyl in this
7  case is between 1.2 kilograms and 4 kilograms so the amount is
8  significant and the amount of potential harm is also
9  significant.
10       I'm also to balance that against the defendant's history
11  and characteristics and, Ms. Khan has said it, this is a very
12  dismal sentencing report because it goes through someone who
13  really the only way I can put it, Mr. Cobb, fell through the
14  cracks.  You didn't have parental supervision, you didn't have
15  state intervention.  There were a lot of things that I wish I
16  had the power to change from reading this.  I suppose the only
17  good thing I can see in here is that you're 29 years old.
18  You're going to have some -- you're going to have a long
19  sentence ahead; you understand I have to give you at least 10
20  years.  But at the same time you'll have some opportunities
21  starting with the residential drug treatment program, but there
22  will be other opportunities as well.  I sincerely hope that you
23  take advantage of those while you're in the Bureau of Prisons.
24  There's vocational training, there's mental health treatment,
25  there are drug addiction issues, and there are things that you

can address in the hopes that when you come out, you can be the family man you just described you want to be, and hopefully you'll have the opportunity to use this time productively. I think you'll have that chance, and I urge you to take advantage of that. But I do note that in terms of history and characteristics, the defendant had a very grim upbringing and almost no parental supervision.

With regard to the need for the sentence imposed, I am to look at a sentence that reflects the seriousness of this crime, promotes respect for the law, provides just punishment, and then affords adequate deterrence as well.

Another factor I'm to consider is the protection of the public. You understand, Mr. Cobb, part of the reason this sentence is so stiff, as required by Congress, is because fentanyl is so dangerous. You mentioned you had a friend who passed from this very substance since you've been incarcerated, and I'm hoping that that has convinced you that this is definitely not where you want to be when you come out.

I'm also to look at any statements issued by the sentencing commission. I am to look to avoid unwarranted sentence disparities with regard to other people with similar conduct.

Taking all of this into consideration, it will be the judgment of the Court that Mr. Cobb will serve a sentence of 120 months, and that will begin as of December 1 of 2017, the

1   day he was arrested and detained.

2   He will serve a term of supervised release of five years
3   upon his release. He will not pay any fines since he has no
4   ability to pay a fine. There is no issue of restitution. He
5   will pay a $100 special assessment, and he will forfeit the
6   matters agreed to in the plea agreement.

7   I recommend that he be placed, when he becomes eligible,
8   in the residential drug treatment program. You'll be eligible
9   later in the sentence. Right now I think you have to be within
10  60 months of discharge because they want this treatment to
11  begin as you're stepping down towards release so that can be in
12  the future and, by imposing this now, it will get you in line
13  and hopefully you'll be eligible when the time comes.

14  With regard to the terms of supervision, he will comply
15  with the standard terms. In addition, he will participate in
16  any type of controlled substance abuse testing as directed by
17  his probation officer together with any treatment directed by
18  his probation officer. And, if appropriate, he will
19  participate in vocational educational services as directed by
20  his probation officer.

21  Are there any other sentencing issues that I've not
22  addressed or any other matters you would like to raise,
23  counsel?

24          MS. KHAN: No, Your Honor.
25          MR. KELLEY: No, Your Honor.

1        THE COURT:  All right.  I believe there is a waiver of
2   appeal.  If you don't mind, I'll ask you out of court to
3   address that issue with Mr. Cobb.
4        MS. KHAN:  Yes, Your Honor.
5        THE COURT:  All right.  Counsel, thank you very much.
6     With that, the clerk may call the next case.
7     (Proceedings concluded at 3:05 p.m.)
8                            - - -

C E R T I F I C A T E

I, Darla J. Coulter, do hereby certify that the foregoing is a true and correct transcript of the proceedings before the Honorable Edmund A. Sargus, Jr., Judge, in the United States District Court, Southern District of Ohio, Eastern Division, on the date indicated, reported by me in shorthand and transcribed by me or under my supervision.

s/Darla J. Coulter
Darla J. Coulter, RMR, CRR
Official Federal Court Reporter

September 30, 2021